IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

SHONTENA K. ELLIOTT, INDIVIDUALLY and as
PERSONAL REPRESENTATIVE ON BEHALF OF
THE WRONGFUL DEATH BENEFICIARIES OF
JONATHAN SCOTT KEEN                                                                    PLAINTIFFS

v.                                                          Civil Action No.: 3:16-cv-00088-MPM-JMV

MANAGEMENT & TRAINING CORPORATION, et al.                         DEFENDANTS

**ORDER**

Now before the Court is plaintiff Shontena K. Elliott's *Motion to Strike* [75]. Defendant Management & Training Corporation ("MTC") filed a response in opposition, to which Elliott filed a reply. The Court has reviewed these submissions and is prepared to rule.

As set forth in previous orders, this action involves the tragic death of Jonathan Scott Keen. On June 16, 2015, Keen committed suicide by hanging himself with his prison jumpsuit while incarcerated at the Marshall County Correctional Facility in Marshall County, Mississippi ("MCCF"). MTC is responsible for the operation of MCCF. This action was brought by Elliott, Keen's mother, on behalf of Keen's wrongful death beneficiaries. Elliott has alleged various federal and state law claims against MTC.

The present motion concerns MTC's proffered expert, Stephen Huffman.[1] Elliott contends that Huffman's proposed expert testimony is inadmissible and, thus, that he should not be permitted to testify. Having reviewed the arguments made by both parties, in conjunction with relevant case law and authorities, the Court finds that the motion should be granted in part.

---

[1] In her motion, Elliott also made arguments to strike Gregory Gordon and Evelyn Dunn. Both Gordon and Dunn were designated as experts by Health Assurance, LLC ("HALLC"). HALLC was initially a defendant in this cause but has recently reached a settlement with Elliott as to each of her claims against it. Consequently, HALLC has been dismissed as a defendant. Therefore, the Court need not address Elliott's arguments to exclude Gordon or Dunn.

*Legal Standard for Expert Testimony*

This Court has previously recognized its duty "to screen a proffered expert's testimony to determine admissibility." *Childs v. Entergy Miss., Inc.*, 2009 WL 2508128, *2 (N.D. Miss. Aug. 13, 2009). "Expert testimony is not admissible unless the expert is qualified and the opinion is scientifically valid and methodologically sound." *Miller v. Genie Indus., Inc.*, 2012 WL 161408, at *4 (N.D. Miss. Jan. 19, 2012) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)).

Regarding an expert's qualifications, "[d]istrict courts must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (citing FED. R. EVID. 702).[2] "A proposed expert does not have to be 'highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility.'" *Bryant*, 78 F.Supp.3d at 631 (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009)). Moreover, "[a] lack of personal experience . . . should not ordinarily disqualify an expert, so long as the expert is qualified based on some other factor provided by Rule 702: 'knowledge, skill, experience, training, *or* education.'" *U.S. v. Wen Chyu Liu*, 716 F.3d 159, 168 (5th Cir. 2013) (quoting FED. R. EVID. 702) (emphasis in original). The Court also notes that the proponent of expert testimony bears the burden to establish the witness's qualifications by a preponderance of the evidence. *U.S. v. Griffith*, 118 F.3d 318, 322 (5th Cir. 1997).

---

[2] *See also Bryant v. 3M Co.*, 78 F.Supp.3d 626, 630 (S.D. Miss. 2015) (quoting *Sullivan v. Rowan Cos.*, 952 F.2d 141, 144 (5th Cir. 1992) ("Whether a witness is qualified to testify as an expert is left to the sound discretion of the trial judge, who is in the best position to determine both the claimed expertise of the witness and the helpfulness of his testimony.").

Turning to the substance of the expert's proposed testimony, "the overarching concern is whether or not it is relevant and reliable." *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007). Regarding relevance, the testimony must "assist the trier of fact to understand the evidence or determine a fact in issue[.]" *Childs*, 2009 WL 2508128, at *2. The relevance requirement is satisfied "where there is a sufficient relationship between the subject of the proffered testimony and the facts of the case, so that the testimony aids the factfinder in resolving a disputed issue." *Id.* (additional citations omitted). As to reliability, "[a] party seeking to introduce expert testimony must show '(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'" *Smith*, 495 F.3d at 227 (citing Fed. R. Evid. 702). "Proposed testimony must be supported by appropriate validation— i.e., 'good grounds,' based on what is known. In short, the requirement that an expert's testimony pertains to 'scientific knowledge' establishes a standard of evidentiary reliability." *Reed v. Flores*, 2010 WL 5051474, at *2 (N.D. Miss. Dec. 3, 2010) (quoting *Daubert*, 509 U.S. at 590).

The Court must also "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)) (additional citations omitted). Additionally, "[t]he party offering the expert testimony bears the burden of proving that the testimony is admissible." *Miller*, 2012 WL 161408, at *4 (citing *Smith*, 495 F.3d at 227).

*Discussion*

In his expert report, Huffman provides the following conclusions:

> Based on the limited discovery information, this report reflects issues I believe were not responsible for the suicide death of offender Keen and not holding the staff and facility negligent for his death. Violations did occur leading up to the incident by staff, but these were not responsible for the offender's death. *In my professional opinion and based upon my professional experience, I believe offender Keen's actions resulted in an unfortunate and unintended death act of suicide*. . . It is unfortunate offender Keen died from his actions, but *I believe he had no intentions of committing suicide*. I believe he was demonstrating another attempt to gain attention in order to be removed from his assigned housing unit. He had destroyed the sprinkler head in resulting in [sic] flooding his cell and knew the staff would be coming to clean up the cell possibly resulting in his removal from the unit. I can speak from experience when offenders want to commit suicide they will plan it when it is convenient to do so. They will wait until the property restriction is cancelled and between rounds by staff. I also believe if the Health Assurance staff, especially Mr. Vance and Dr. Lancaster believed offender Keen was suicidal they should have completed a follow-up and placed offender Keen on one of the Suicide Risk Levels.

(emphasis added). In her motion, Elliott argues that Huffman should not be permitted to testify as to Keen's state of mind—specifically, whether or not he intended to commit suicide. Elliott contends that this is outside the realm of admissible expert testimony. Additionally, she avers that Huffman's expertise in the area of criminal justice does not qualify him to discuss an individual's state of mind.

Elliott states that "Huffman claim[s] that [Keen] was displaying attention seeking behavior when he cut himself on numerous occasions. [He] also opine[s] that [Keen] did not intend to kill himself on June 16, 2015. Instead, [he] claim[s] that Mr. Keen's death was unintentional or accidental." Elliott avers that Huffman's opinion as to whether or not Keen intended to commit suicide exceeds the scope of acceptable expert testimony. In its response, MTC "concedes that Stephen Huffman is not qualified to offer any medical diagnosis of Jonathan Scott Keen. To the extent that his report seems to reflect any opinions on Keen's

mental health, those opinions are withdrawn, and MTC will not solicit testimony on them at trial."

Thus, the parties agree that Huffman should not testify as to Keen's state of mind. The Court notes that Fifth Circuit case law on this point is rather clear. *See Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 541 (5th Cir. 2007) ("[A]n expert's conclusory assertions regarding a defendant's state of mind are not helpful or admissible."); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) ("[An expert's] conclusory assertions regarding [a party's] state of mind would not be helpful to a jury [and] were not admissible."). Therefore, the Court will not permit Huffman to testify concerning Keen's state of mind, as it would not be helpful to the jury and is not admissible. Elliott's motion will be granted on that issue.

MTC does contend, however, that Huffman should be permitted to "offer opinions about the proper administration of a prison and whether that was done with respect to Keen's suicide." In its brief, MTC specifically states that "Huffman's opinion is that MTC acted properly under the circumstances because, in his experience, Keen's behavior (while highly unusual to a person outside of the penal system) did not indicate suicidal behavior." Elliott avers that this testimony is impermissible because by testifying as to this issue, Huffman would be testifying as to Keen's mental state.

The Court finds Elliott's response unconvincing. Huffman has extensive experience in the criminal justice field, as he has worked in various correctional institutions for a total of over 35 years. This knowledge and expertise of the prison system provides a proper foundation for him to testify as to whether he believes MTC acted properly in its handling of Keen.[3] In the

---

[3] Elliott contends that Huffman's report "is silent about whether MTC acted properly in response to Mr. Keen's behavior." In the Court's view, this statement is inaccurate, as Huffman specifically stated in his report that "[v]iolations did occur leading up to the incident by staff[.]"

5

Court's view, Huffman can testify as to this issue without encroaching into the impermissible arena of Keen's mental state at the time he committed suicide. However, the Court is also aware that Huffman may be tempted to exceed the scope of permissible testimony, and it will certainly entertain any objections that Elliott may have if he attempts to do so at trial. *See Rivera v. Salazar*, 2008 WL 2966006, at *1 (S.D. Tex. July 30, 2008) (citing *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975)) (Evidentiary rulings "should often be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in proper context."). Outside of that context, though, the Court cannot properly address Elliott's concerns, as it simply cannot provide a more definitive ruling. Consequently, to the extent that Elliott's motion seeks to exclude this portion of Huffman's testimony, it will be denied.

*Conclusion*

In accordance with the foregoing analysis, it is hereby ORDERED that Elliott's *Motion to Strike* [75] is GRANTED IN PART.

SO ORDERED, this the 6th day of July, 2017.

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**